IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| POGO RESOURCES, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-2682-BH |
| | § | |
| ST. PAUL FIRE AND MARINE | § | |
| INSURANCE COMPANY, A MEMBER | § | |
| COMPANY OF THE TRAVELERS | § | |
| GROUP OF INSURERS, | § | |
| Defendant. | § | Consent Case[1] |

## MEMORANDUM OPINION AND ORDER

Before the Court is *Plaintiff's Motion for Leave to File Second Amended Complaint and Brief in Support*, filed January 22, 2021 (doc. 56).  Based upon the relevant filings and applicable law, the motion for leave is **GRANTED**.

## I.  BACKGROUND

St. Paul Fire and Marine Insurance Company (Defendant) issued Pogo Resources, LLC (Plaintiff), a Texas oil & gas company, commercial general liability policies for its oil & gas operations, effective March 1, 2016 to March 1, 2017 (collectively Pogo Policies).  (*See* doc. 9 at 6;[2] docs. 14-1–14-11.)  Plaintiff sues for mutual mistake/reformation, waiver, estoppel, tortious interference, breach of contract, bad faith, and deceptive trade practices. (*Id.* at 2.)

### A.    Factual Background

Paladin Energy Corporation (Paladin) was a Dallas-based oil & gas company that owned and operated oil and gas assets in Texas and New Mexico. (*Id.* at 2.)  It obtained commercial general

---

[1] By consent of the parties and the order of transfer dated January 29, 2020, this case has been transferred for the conduct of all further proceedings and the entry of judgment.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

liability and umbrella excess protection insurance policies, effective from July 1, 2016 through July 1, 2017 (collectively Paladin Policies), which provided liability coverage for property damage caused by certain incidents, as well as limited pollution clean-up coverage and limited pollution bodily injury/property damage coverage, from Defendant. (*Id.* at 5-6; doc. 14-1 at 1.) That coverage was altered, in part, by two endorsements.  (docs. 9 at 11-12; 14-7 at 4; 14-10 at 13-14.)

The "Total Pollution Injury or Damage and Pollution Clean-Up Cost Exclusion Endorsement - Oil and Gas Commercial General Liability" (GL Endorsement) provides, in relevant part:

2.  The following replaces the Pollution clean-up costs that result from your products exclusion.

**Pollution clean-up costs.** We won't cover pollution clean-up costs.

3.  The following replaces the Pollution injury or damage exclusion.

**Pollution injury or damage.** We won't cover injury or damage or medical expenses that result from pollution.

4.  The following replaces the Pollution work loss, cost, or expense exclusion.
**Pollution work loss, cost, or expense.** We won't cover any:

• loss, cost, or expense that results from any request, demand, order, or statutory or regulatory requirement that any protected person or others perform pollution work;

• cost or expense that's for pollution work; or

• loss, cost, or expense that results from any claim or suit by or for any governmental authority because of the performance of pollution work.

(doc. 14-7 at 4 (formatting original).)

The "Total Pollution Injury or Damage and Pollution Clean-Up Costs Exclusion Endorsement - With Exception for Certain Bodily Injury, Property Damage, or Pollution Cost or Expense Related to Autos - Oil and Gas Umbrella Excess Liability" (Umbrella Endorsement)

provides, in relevant part:

> 2. The following replaces the Pollution clean-up costs for underground water pollutants exclusion. This change excludes coverage.
>
> **Pollution clean-up costs.** We won't cover pollution clean-up costs.
>
> * * *
>
> 3. The following replaces the Pollution injury or damage exclusion.  This change excludes coverage.
>
> **Pollution injury or damage.** We won't cover injury or damage that results from pollution.
>
> * * *
>
> 4. The following replaces the Pollution work loss, cost, or expense exclusion. This change excludes coverage.
>
> **Pollution work loss, cost, or expense.** We won't cover any:
>
>> • loss, cost, or expense that results from any request, demand, order, or statutory or regulatory requirement that any protected person or others perform pollution work;
>>
>> • cost or expense that's for pollution work; or
>>
>> • loss, cost, or expense that results from any claim or suit by or for any governmental authority because of the performance of pollution work.

(doc. 14-10 at 13-14 (formatting original).)[3]

On April 21, 2016, Paladin filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Texas.  *See In re Paladin Energy Corp.*, No. 16-31590-bjh-11 (N.D. Tex. Bank.) (Paladin Bankruptcy).  It continued to operate its business and to manage its bankruptcy estate as debtor-in-possession throughout the bankruptcy. (*See* Paladin Bankr., doc. 1.)

---

[3]Unlike the Paladin Policies, the Pogo Policies do not include exclusions for pollution clean-up costs and pollution damages.  (docs. 9 at 6; 14-1–14-11.)

In February 2017, saltwater spills occurred at two of its well sites in New Mexico (collectively Spill A). (docs. 9. at 3; 9-4.)  The New Mexico Oil Conservation Division (NMOCD) assigned a release remediation permit for Spill A, and Paladin filed a claim with Defendant for coverage under the Paladin Policies. (doc. 9 at 3.)

On February 23, 2017, the bankruptcy court granted a motion to approve bidding procedures for the sale of Paladin's assets.  (*See* Paladin Bankr., doc. 213.)  On May 15, 2017, Paladin and Plaintiff executed a Stalking Horse Purchase and Sale Agreement (PSA), effective May 1, 2017, for the purchase of substantially all of Paladin's oil and gas property (collectively the Property). (doc. 9 at 2; doc. 9-1.)  The PSA provided that "Seller shall sell, convey and assign to Buyer and Buyer shall purchase, pay for, and accept all of Seller's right and title to, and interest in, and all privileges and obligations appurtenant to" the Property, including, among other things, "any interests related to insurance policies that may be in place to cover any liability outlined in or related to Buyer's obligations as set forth in Section 9.2, Section 9.3 and Section 9.4." (doc. 9-1 at 17-18.)  It also included the following provision, entitled "Buyer's Environmental Obligations:"

> Upon and after Closing, and subject to Downward Adjustments as outlined herein, Buyer assumes full responsibility and liability for all occurrences, events, conditions, and activities on or related to the Property (the "Environmental Obligations"), regardless of whether arising from the ownership or operation of the Property before, on or after the Effective Date, and regardless of whether resulting from any acts or omissions of Seller (INCLUDING THOSE ARISING FROM SELLER'S SOLE, JOINT, CONCURRENT, OR COMPARATIVE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT) or the condition of the Property when acquired, including but not limited to the following:
>
> > (a) Environmental pollution or contamination, including pollution or contamination of the soil, groundwater or air by Hydrocarbons, drilling fluid or other chemicals, brine, produced water, NORM, or any other substance;
> >
> > (b) Underground injection activities and waste disposal on the Property;

(c) Clean-up responses, and the cost of remediation, control, assessment or compliance with respect to surface and subsurface pollution caused by spills, pits, ponds, lagoons or subsurface storage tanks;

(d) Non-compliance with applicable land use, surface disturbance, licensing or notification Laws or Orders;

(e) Disposal on the Property of any hazardous substances, wastes, materials and products generated by or used in connection with the ownership or operation of the Property before, on or after the Effective Date; and

(f) Non-compliance with Environmental Laws.

(*Id.* at 45-46 (capitalization original).)  As reflected in Exhibit G to the PSA, entitled "Certain Environmental Matters," Paladin provided Plaintiff notice of Spill A.  (*Id.* at 95.)

On June 11, 2017, a spill occurred at another Paladin well site in New Mexico (Spill B), and Paladin notified Plaintiff of Spill B on June 14, 2017. (doc. 9 at 3-4.)  It also notified Defendant and filed a claim for coverage under the Paladin Policies for the costs associated with Spill B, and the NMOCD assigned a release remediation permit for Spill B. (*Id.* at 4.)

On or about July 13, 2017, Plaintiff's insurance broker sent Defendant a schedule of the Paladin wells Plaintiff had acquired, and reminded it of the outstanding pollution claims for Spills A and B. (*Id.* at 3.)  On the same day, a claims adjuster for Defendant confirmed that it "would be paying for both claims." (*Id.*)  An email dated July 14, 2017, from the adjuster to Paladin stated that she had reviewed the Paladin Policies and did not see a deductible under Defendant's general liability policy.  (*Id.* at 3; doc. 9-3 at 1-2.)

On July 21, 2017, the bankruptcy court approved the sale of substantially all of Paladin's assets to Plaintiff under the PSA, and issued an order authorizing the assumption and assignment or negation of executory contracts and unexpired leases, if necessary. (*See* Paladin Bankr., doc. 266.)

5

The sale closed on August 18, 2017.  (doc. 9 at 2.)  On September 7, 2017, Defendant sent Paladin two letters stating that it had "settled the property damage claim filed against your St. Paul Fire And Marine policy" in connection with Spill A.  (*Id.* at 3; doc. 9-4.)[4]

In October 2017, Plaintiff, Paladin, and EeTradeo, LLC (EeTradeco) entered into a Transition Agreement "to vest EeTradeco with the power and authority to assist in effectuating the orderly transitions of the rights and responsibilities relating to" Spills A and B and to certain properties assigned to Plaintiff under the PSA. (doc. 9-2 at 2.)  On November 29, 2017, Defendant's adjuster emailed EeTradeco requesting "information on the status of [NMOCD's] approval of the completed clean-up on Spill A, and the proposed remediation plan on Spill B."  (doc. 9 at 4.)  On the same day, EeTradeco notified the adjuster that Plaintiff "had been operating the assets since mid-August and forwarded the environmental consulting invoices for reimbursement." (*Id.*)  On June 11, 2018, NMOCD emailed Plaintiff, Defendant, and a third-party remediation contractor that the proposed remediation plan for Spill B was approved.  (*Id.* at 4, doc. at 9-6.)

On January 19, 2018, the bankruptcy court issued an order confirming the Chapter 11 liquidation of Paladin. (*See* Paladin Bankr., doc. 301.)  On or about February 28, 2019, a conference call was conducted between Defendant, Plaintiff, the impacted landowners, their lawyers, and the remediation contractor, regarding the approved remediation plan for Spill B. (doc. 9 at 4.)  The landowners rejected the plan and demanded a complete removal and replacement of soil at an estimated cost of $3.5 million.  (*Id.*)  On May 28, 2019, Defendant sent Plaintiff a letter denying coverage for Spill B under the Paladin Policies based, among other things, on the "total pollution exclusion" endorsement that altered coverage for "pollution clean-up costs."  (*Id.*; doc. 9-7.)

---

[4]Plaintiff alleges that it "has been fully compensated for the costs associated with responding to Spill A" and "does not seek any additional payment from [Defendant] for Spill A at this time."  (*Id.*)

B.    **Procedural History**

Plaintiff filed this lawsuit in state court on September 27, 2019. (*See* doc. 8-3.)   After Defendant removed it to federal court, Plaintiff amended its petition to assert claims for mutual mistake/reformation, waiver, estoppel, tortious interference, breach of contract, bad faith, and deceptive trade practices. (*See* doc. at 9.)   It sought actual and exemplary damages, declaratory relief, prejudgment and post-judgment interest, court costs, and attorney's fees. (*Id.* at 16.)   The initial scheduling order set a discovery deadline of September 1, 2020, a deadline for amended pleadings of June 3, 2020, and a trial date of March 1, 2021. (doc. 17.)   The discovery deadline was later extended until December 18, 2020, and the trial date was moved to October 4, 2021.   (docs. 34, 51.)   The deadline for amended pleadings was not extended.

On August 12, 2020, Defendant moved to dismiss Plaintiff's claims for mutual mistake/reformation, waiver, and estoppel, as well as for deceptive trade practices and bad faith based on the Paladin Policies. (doc. 20.)   Its motion was granted on January 12, 2021, and these claims were dismissed with prejudice based on a finding that Plaintiff lacked standing to pursue its claims based on the Paladin Policies, since it did not allege that "it was a party to the Paladin Policies or a third-party beneficiary to the Paladin Policies, or that the actual parties to the Paladin Policies assigned them to it." (doc. 53 at 12.)   Because Plaintiff's allegation in its response to the motion to dismiss that the Paladin Policies were assigned to it as part of the Paladin Bankruptcy had not previously been pleaded, the Court declined to consider it for the first time "for purposes of the motion for judgment on the pleadings." (*Id.* at 12 n.8.) It noted that Plaintiff's claims for deceptive trade practices and bad faith based on the Pogo Policies remained for trial, as well as its breach of contract and tortious interference claims. (*Id.* at 20.)

On January 22, 2021, Plaintiff moved for leave to file a second amended complaint to "(1) clarify the causes of action remaining in this case and cure potential pleading deficiencies and (2) seek reconsideration of the Court's dismissal with prejudice of [its] claim for bad faith under the Paladin Policy." (doc. 56 at 1-2.)  The proposed amendment (1) includes additional factual detail as to the bankruptcy proceedings and the PSA to clarify that Paladin's interests and claims under the Paladin Policies were assigned to Plaintiff; (2) identifies the specific conflicting endorsements in the Paladin Policies; (3) cites statutory authority for the declaratory relief claim and specifies the declarations Plaintiff seeks; (4) clarifies the factual allegations underlying the elements of each breach of contract claim; (5) clarifies that the bad faith claim arises under common law and Chapter 541 of the Texas Insurance Code and provides additional factual detail supporting the statutory and common-law elements; (6) eliminates the causes of action for reformation/mutual mistake, waiver, estoppel, and deceptive trade practices; and (7) provides statutory authority in support of the request for attorney's fees. (*See id.* at 4-7; doc. 56-2.)  With a timely filed response (doc. 59) and reply (doc. 60), Plaintiff's motion for leave to amend its complaint is ripe for determination.

## II.  MOTION FOR LEAVE TO AMEND

Plaintiff seeks reconsideration of the dismissal with prejudice of its bad fath claim based on the Paladin Policies and moves for leave to amend its complaint under Rule 15(a) of the Federal Rules of Civil Procedure. (doc. 56 at 3.)  Defendant responds that it must first show good cause under Rule 16(b). (doc. at 59 at 1-2.)

### A.    Rule 16(b)

Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings where, as in this case, the deadline in a scheduling order has expired. *Hawthorne Land Co. v. Occidental Chem.*

8

*Corp.*, 431 F.3d 221, 227 (5th Cir. 2005); *S&W Enters., L.L.C. v. South Trust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). When leave to amend is sought after the deadline, the movant has the burden to show "good cause" to modify the scheduling order and amend its pleadings. *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 869 (5th Cir. 2010). The Fifth Circuit has identified four factors for a court to consider when determining whether the movant has shown "good cause" in the context of an untimely motion to amend pleadings: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *S&W Enters.*, 315 F.3d at 536. (citing *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)). "The court considers the four factors holistically and does not mechanically count the number of factors that favor each side." *Sun River Energy, Inc. v. McMillan*, No. 3:13-CV-2456-D, 2014 WL 4771852, at *4 (N.D. Tex. Sept. 25, 2014) (quotation and citation omitted). "Courts will deny a motion for leave where the delay is unnecessary, or little to no explanation is offered for an extended delay in amending the pleading." *McLane Co., Inc. v. ASG Techs. Grp. Inc.*, No. 6:17-CV-00166-ADA-JCM, 2018 WL 7291380, at *2 (W.D. Tex. Oct. 17, 2018) (citing *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 238 (5th Cir. 2015)).

### 1. *Explanation for Untimeliness*

The first factor requires an explanation for the movant's failure to timely amend. *See S&W Enters.*, 315 F.3d at 536. Courts have found sufficient explanation in cases involving developments in applicable law and when new facts become known through depositions and document production while the case is pending. *See Robles v. Archer W. Contractors, LLC*, No. 3:14-CV-1306-M, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015); *Settlement Capital Corp., Inc. v. Pagan*, 649 F.

Supp. 2d 545, 566–67 (N.D. Tex. 2009). Courts have not found sufficient explanation when a scheduling mistake caused a missed deadline, a party misunderstand a statute, or a party did not understand the scheduling order. *See STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp.2d 845, 850 (5th Cir. 2004) ("[A] party's failure to meet a deadline due to mere inadvertence is tantamount to no explanation at all.") (internal quotation marks omitted); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (finding a scheduling mistake in counsel's office was not a "satisfactory explanation for which relief may be granted"); *Sun River Energy, Inc. v. McMillan*, No. 3:13-CV-2456-D, 2014 WL 4771852, at *4 (N.D. Tex. Sept. 25, 2014) ("[M]isunderstanding of the law, however, constitutes mere inadvertence, which is tantamount to no explanation at all.") (internal quotation marks omitted); *see also Regions Bank v. Law Offices of Sherin Thawer, P.C.*, No. 3:11-CV-1285-L, 2012 WL 1191850, at *6 (N.D. Tex. Apr. 10, 2012) (denying a motion to amend because plaintiff could not identify a "reasonable explanation for the delay").

Here, Plaintiff moved for leave to amend 10 days after Defendant's 12(c) motion was granted, and the claims based on the Paladin Policies were dismissed with prejudice for lack of standing. (*See* docs. 53, 56.) It maintains that the Amended Complaint sufficiently alleges its status as assignee of the Paladin Policies, as the PSA was attached to the complaint and clearly referenced the assignment, and "readily admits that it could have more artfully raised its standing arguments in its Amended Complaint and response to Defendant's 12(c) motion." (doc. 60 at 3-4.)[5] A partial

---

[5]Plaintiff attached to the Amended Complaint the 103-page PSA along with other documents comprising an additional 400 pages. (*See* docs. 9-1–9-12.) Although these documents are considered part of the pleadings, mere reference to them "is insufficient to meet Rule 8's pleading requirements." *Muttathottil v. Gordon H. Mansfield*, 381 F. App'x 454, 457 (5th Cir. 2010); *see Baney v. Holder*, No. 3:12-CV-5140-N-BN, 2013 WL 875231, at *4 (N.D. Tex. Feb. 5, 2013), *adopted by* 2013 WL 875285 (N.D. Tex. Mar. 11, 2013) ("A plaintiff must do more than simply attach a document to the complaint to state a claim for relief; he must also in some way identify the allegations that he wishes to incorporate into his lawsuit.").

dismissal based on deficiencies in Plaintiff's pleadings is not an appropriate reason for not timely moving for leave to amend. *See Avialae S De RL De CV v. Cummins Inc*, No. EP-19-CV-380-PRM, 2020 WL 7488177, at *3 (W.D. Tex. Aug. 24, 2020) (finding the court's dismissal of claims due to plaintiff's own pleading deficiencies was not an adequate explanation for delay); *see also Valcho v. Dallas Cty. Hosp. Dist.*, 658 F. Supp. 2d 802, 815 (N.D. Tex. 2009) (explaining that plaintiff's unawareness of pleading deficiencies until after the issue was raised in defendant's motion for summary judgment was "not a reasonable explanation for failing to seek timely leave to amend"). "It is Plaintiff's responsibility, not the Court's, to timely plead its best case within the deadlines set by the Scheduling Order." *Avialae S De RL De CV*, 2020 WL 7488177, at *3.  The first factor weighs against granting the motion for leave to amend.

## 2.    *Importance of the Amendment*

Under the second factor, Plaintiff must identify the importance of its untimely amendment. *See S&W Enters.*, 315 F.3d at 536.  "Courts deem 'amendments to be important where they potentially provide[ ] additional grounds for [a party] to recover, or directly affect[ ] [a party's] prospects of ultimate recovery.'" *Feldman v. Stryker Corp.*, No. 3:18-CV-1416-S, 2020 WL 2507684, at *2 (N.D. Tex. May 15, 2020) (quoting *Kouzbari v. Health Acquisition Co., LLC*, No. 3:18-CV-0126-D, 2018 WL 6514766, at *3 (N.D. Tex. Dec. 11, 2018) (citations and internal quotations omitted); *see Maynard v. PayPal, Inc.*, No. 18-CV-0259-D, 2018 WL 5776268, at *4 (N.D. Tex. Nov. 2, 2018).

Plaintiff argues that the proposed amendments are important because it would be foreclosed from pursuing important claims at trial without them. (*See* docs. 56 at 2; 60 at 8.)  As discussed, Plaintiff's bad faith claim was dismissed with prejudice for lack of standing. (*See* doc. 53.) The

amendment not only reasserts the bad faith claim, but it pleads additional facts and clearly articulates the grounds on which Plaintiff has standing to sue on all its claims against Defendant. (*See* doc. 56-1.) It also clarifies the elements and supporting allegations for each cause of action, as well as the statutory authority for Plaintiff's claims for bad faith, declaratory relief, and attorney's fees. (doc. 56 at 7.)  It is clear that the amendment is important. *See, e.g., Papa Berg, Inc. v. World Wrestling Ent., Inc.*, No. 3:12-CV-2406-B, 2013 WL 6159296, at *5 (N.D. Tex. Nov. 25, 2013) (concluding that amendments were important because they clarified the supporting allegations of a claim that had been dismissed for failure to properly plead the claim's elements); *Archer Motor Sales Corp. v. Mazda Motor of America, Inc.*, Civ. A. No. H–08–3587. 2009 WL 1660394, *2 (S.D.Tex. June 15, 2009) (finding amendment important, in part, because it clarified factual bases for existing claims); *Sievert v. Howmedica Osteonics Corp.*, No. 3:18-CV-2175-S, 2020 WL 2507678, at *2 (N.D. Tex. May 15, 2020) (explaining that an amendment that cures pleading defects sufficiently showed the importance of the proposed amendment).  The second factor weighs heavily in favor of granting leave to amend.

### 3. *Potential Prejudice and Possibility of a Continuance*

The third and fourth factors require consideration of the potential prejudice that Plaintiff's amendment will cause Defendant and the availability of a continuance to cure any such prejudice. *See S & W Enters.*, 315 F.3d at 536.  Although courts have not directly defined prejudice in the Rule 16(b) context, "prejudice" is generally defined as "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (10th ed. 2014).  Courts have found prejudice to a defendant when amendments would delay trial, restart a case at an earlier stage, or otherwise unfairly limit a parties ability to present their case at trial. *See, e.g., Navarro v. Microsoft Corp.*, 214 F.R.D. 422, 424 (N.D.

12

Tex. 2003) (finding prejudice even though the new causes of action in the proposed amended complaint were "virtually identical," because the defenses were not necessarily the same); *King v. Life School*, No. 3:10-CV-0042-BH, 2011 WL 5242464, at *2 (N.D. Tex. Nov. 3, 2011) (finding potential prejudice when "allowing the new claims would require essentially restarting the lawsuit for amended pleadings, discovery, and motions").

Plaintiff contends that the amendment does not "add any new causes of action or issues of dispute" but instead "clarif[ies] and bolster[s] the remaining causes of action" and "replead[s] sufficient factual detail for its claim for bad faith under the Paladin Policies." (doc. 56 at 2.)  It argues that Defendant will not be unduly prejudiced or burdened "[b]ecause each of these causes of action have been asserted from the outset of [the] case." (*Id.*)  Defendant responds that it would be prejudiced because the amendment includes "claims for violations of the Texas Insurance Code, including allegations regarding [its] conduct in the purported attempt to settle with the landowner where Spill B occurred," and it "will need to seek discovery on this issue, which may include deposing the landowner and/or issuing a subpoena for documents from him to build its defense to these claims." (doc. 59 at 15.)

Here, the potential for prejudice in allowing the proposed amendment is minimal, and any such prejudice could be cured by a continuance.  Notably, the amendment does not change the nature of the suit. *See Dozier v. Rowan Drilling Co.*, 397 F. Supp.2d 837, 855 (S.D. Tex. 2005) (permitting amendment of complaint when amendment does not change the nature of the suit). Although the Amended Complaint does not allege a separate claim for statutory bad faith and it does not reference Chapter 541, common-law and statutory bad faith claims are sufficiently similar and both claims appear to share many factual predicates. *See Aleman v. Zenith Ins. Co.*, 343 S.W.3d 817,

13

822 (Tex. App.—El Paso 2011, no pet.) ("The statutory 'reasonably clear' standard is identical to the common law bad faith standard."); *see also Trejo v. Allstate Fire & Cas. Ins. Co.*, No. SA-19-CV-00180-FBE-SC, 2019 WL 4545614, at *5 (W.D. Tex. Sept. 19, 2019), *adopted by* 2019 WL 10302169 (W.D. Tex. Nov. 1, 2019) (quoting *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993)) ("The key inquiry in a bad-faith claim is 'the reasonableness of the insurer's conduct in rejecting the claim.').  Given the similarities, Defendant has been on notice of a potential statutory bad faith claim under Chapter 541 since the filing of the Amended Complaint.  Even if additional discovery is necessary because of the amendment, Defendant has an available remedy in the form of requesting an appropriate modification of the discovery period and the deadline for dispositive motions.[6]  Accordingly, the risk of prejudice and the possibility of granting a continuance weigh in favor of granting leave to amend.

Considering the four factors as a whole, Plaintiff has met its burden to establish "good cause" to modify the scheduling order deadlines and permit an untimely amendment to its complaint. Analysis of its motion for leave under the more liberal Rule 15(a) is therefore appropriate. *See S & W Enters., L.L.C.*, 315 F.3d at 536; *Sapp*, 406 F. App'x at 868-69 (explaining that when movant's request for leave to amend is untimely, the "more liberal standard of Rule 15(a) applies only if [movant] demonstrates good cause for the modification of the schedul[ing] order" to allow amendments after the deadline).

### B.   Rule 15(a)

Rule 15(a) provides that courts "should freely give leave [to amend] when justice so

---

[6]Nevertheless, Courts are not required to grant a continuance in all cases. *See Region Bank*, 2012 WL 1191850, at *5 (citing *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997)). The decision to grant a continuance is within the sound discretion of the court. *S & W Enters.*, 315 F.3d at 537.

requires." Fed. R. Civ. P. 15(a)(2).  The rule evinces a bias in favor of amendment and requires that leave be granted "freely." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982).  A court's discretion to grant leave is severely limited by the bias of Rule 15(a) favoring amendment. *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Leave to amend should not be denied unless there is a *substantial reason* to do so. *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998).  "In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005); *see McClure v. Turner*, 481 F. App'x 167, 171 (5th Cir. 2012).

### 1.     *Undue Delay, Bad Faith, Dilatory Motive, and Prejudice*

Defendant contends that Plaintiff waited to amend its complaint until after the amendment deadline and after its motion to dismiss was granted, and that the timing of its request for leave to amend suggests bad faith or dilatory motive.  (doc. 59 at 17.)  It also contends that it would be unduly prejudiced by the amendment.  (*Id.*)

"A litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend. Merely because a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant." *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982). Delay alone is an insufficient basis to deny leave to amend, and delay must be "*undue, i.e.*, it must prejudice the nonmoving party or impos[e] unwarranted burdens on the court." *In re Enron Corp. Securities, Derivative & ERISA*

*Litigation*, 610 F. Supp.2d 600, 653 (S.D. Tex. 2009) (quoting *Mayeaux v. Louisiana Health Service and Indemnity Co.*, 376 F.3d 420, 427 (5th Cir. 2004)) (emphasis original).  When a court considers a motion for leave to add a new theory to the complaint, "[a]s a general rule, the risk of substantial prejudice increases with the passage of time." *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 3:06-CV-0073-D, 2007 WL 2592353, at *2 (N.D. Tex. Sept. 10, 2007) (citation omitted).  The Fifth Circuit recognizes that "even under the more liberal Rule 15 standard [a court] 'more carefully scrutinize[s] a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment.'" *Squyres*, 782 F.3d at 239 (citation omitted).

Here, Plaintiff seeks leave to file an amended complaint over a year after filing this action, and eight months after the amendment deadline, but immediately after the Court dismissed claims based on the Paladin Policies for lack of standing. (*See* docs. 53; 56.)  Plaintiff "seeks to clarify and bolster the remaining causes of action and to replead sufficient factual detail for its claim for bad faith under the Paladin Policies." (doc. 56 at 2.)  The proposed amendment includes additional factual background regarding the Paladin Bankruptcy and the interests and claims that were assigned to Plaintiff, as well as allegations that Plaintiff is an assignee and successor in interest to the Paladin Policies. (*See* doc. 56-2.)  It also clarifies the legal basis and statutory authority for Plaintiff's bad faith and attorney's fees claims, as well as the elements for its declaratory judgment, breach of contract, and tortious interference claims. (*Id.*)

Even though Plaintiff seeks leave to file an amended complaint after the amendment deadline, there have been no repeated failures to cure deficiencies, and nothing in the record suggests bad faith or dilatory motive by Plaintiff. *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d

636, 644 (5th Cir. 2007) (affirming denial of the plaintiffs' motion for leave to amend complaint because the district court allowed previous amendments and because plaintiffs "had been aware of the factual underpinnings of the [additional] claim for some time ... [but] had not been diligent in pursuing the claim"); *Overseas Inns, S.A. P.A. v. United States*, 911 F.2d 1146, 1150 (5th Cir. 1990) (upholding denial of leave to amend under Rule 15(a) where extensive proceedings had taken place, defendant had filed a motion for summary judgment, and plaintiff attempted to amend two-and-a-half years after filing its complaint, and only after filing its own motion for summary judgment); *WRR Indus., Inc. v. Prologis*, No. 3:04-CV-2544-L, 2006 WL 1814126, at *5 (N.D. Tex. June 30, 2006) (finding bad faith and dilatory motive where the motion for leave to amend would fundamentally alter the case after 18 months, and motions to dismiss and for summary judgment had been filed).  Further, the delay is not yet undue as the trial date is over six months away. *See OnAsset Intelligence, Inc. v. Freightweight International (USA), Inc.*, No. 3:11-CV-3148-G, 2012 WL 5409660, at *2 (N.D. Tex. Nov. 6, 2012) (finding the "usual case in which 'undue delay' supports a court's denial of leave to amend is where a party waits until the eve of trial to assert a new claim); *Daves v. Payless Cashway, Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981) (finding an unexplained delay in seeking to amend complaint on the day of trial coupled with the fact that the amended complaint presented a theory of recovery far removed from the original, justified denial of leave to amend even though there was no showing of bad faith).

Defendant has not shown that permitting the amendment will cause undue delay or prejudice under these circumstances.  Although the discovery deadline has passed, the proposed amendment does not appear to require any further discovery.  Further, a continuance would relieve any prejudice experienced by Defendant as a result of the passed discovery and expert designation deadlines.

17

Accordingly, prejudice to Defendant, if any, is minimal and curable.  When the facts in this case are "carefully scrutinized," nothing in the record suggests an undue delay, dilatory motive, or bad faith by Plaintiff, or undue prejudice to Defendant. *See Squyres*, 782 F.3d at 239.

### 2.     *Futility*

Defendant also argues that the amendment would be futile. (doc. 59 at 12-13, 17.)

The Fifth Circuit has interpreted futility under Rule 15 to mean that "the amended complaint would fail to state a claim upon which relief could be granted," so courts must apply the same standard as under Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Leave to amend does not need to be granted when the amended complaint would not defeat a motion to dismiss. *See id.* The issue of futility, however, is better addressed "in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer." *Smallwood*, 2011 WL 4941044 at *1; *see also McDade v. Wells Fargo Bank, N.A.*, No. H-10-3733, 2011 WL 4860023 at *4 (S.D. Tex. Oct. 13, 2011) (explaining that in the context of a motion for leave, futility means that "the amended complaint would fail to state a claim upon which relief could be granted") (quoting *Stripling*, 234 F.3d at 873). This Court's "almost unvarying practice when futility is raised [in response to a motion for leave to amend] is to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion ... where the procedural safeguards are surer." *Poly-America, Inc. v. Serrott Int'l Inc.*, No. 3:00-CV-1457-D, 2002 WL 206454, at *4-5 (N.D. Tex. Feb. 7, 2002) (citation omitted).

As discussed, the proposed amendment alleges that Plaintiff is an assignee and successor in interest to the Paladin Policies, and appears to cure the standing defect. *See, e.g., Omega Hosp., LLC v. United Healthcare Servs., Inc.*, 389 F. Supp. 3d 412, 426-27 (M.D. La. 2019) (finding leave to

amend warranted where the proposed amendment appeared to remedy the deficiencies from the previous pleading).  Because Defendant has already moved to dismiss Plaintiff's claims for the same reasons it opposes the proposed amendment, its arguments regarding failure to state a claim are best considered in the Rule 12(b) or Rule 56 context.  Accordingly, Plaintiff's motion for leave to amend the complaint will not be denied as futile at this stage of the proceedings.

Having considered the relevant factors, there is no "substantial reason" to deny Plaintiff's motion for leave to amend its complaint. *See Jacobsen*, 133 F.3d at 318; *Carson*, 689 F.2d at 583-585 (finding the district court abused its discretion in denying leave to amend complaint to add an additional claim where there was no pretrial order or conference, there was no evidence in the record to suggest the plaintiff acted in bad faith in not previously including the claim, and there was no evidence of prejudice to the defendants if the claim was allowed to be made).[7]

### III.  CONCLUSION

Plaintiff's motion for leave to amend its complaint (doc. 56) is **GRANTED**.  The Clerk's Office shall file the proposed second amended complaint (doc. 56-2) attached to Plaintiff's motion.

---

[7]As noted, Plaintiff seeks reconsideration of the dismissal of its bad faith claim based on the Paladin Policies.  As noted by the Fifth Circuit, "the Federal Rules of Civil Procedure do not provide for a motion for reconsideration." *Shepherd v. International Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir. 2004); *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990) (noting that the federal rules of procedure "do not recognize a 'motion for reconsideration' *in haec verba*"), *abrogated on other grounds by Little v. Liquid Air Corp.,* 37 F.3d 1069, 1076 n. 14 (5th Cir.1994).  Where a motion for reconsideration does not, as here, challenge a final judgment, it is considered under Rule 54(b).  *See McClendon v. United States,* 892 F.3d 775, 781 (5th Cir. 2018) (citing *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)).  Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  Under Rule 54(b), "'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere,* 910 F.2d at 185).  The Fifth Circuit has specifically noted Rule 54(b)'s flexibility, which reflects courts' inherent power to provide relief from interlocutory orders and decisions "'as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)); *Cabal v. Brennan*, 853 F.3d 763, 766 n. 3 (5th Cir. 2017). Because Plaintiff has shown good cause for its untimely motion, and there is no substantial reason to deny its motion, reconsideration of the prior dismissal of the claim with prejudice is warranted.

**SO ORDERED** this 13th day of May, 2021.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

20