IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| POGO RESOURCES, LLC, | § | |
|     Plaintiff, | § | |
| | § | Civil Action No. 3:19-CV-2682-BH |
| v. | § | |
| | § | |
| ST. PAUL FIRE AND MARINE | § | |
| INSURANCE COMPANY, A MEMBER | § | |
| COMPANY OF THE TRAVELERS | § | |
| GROUP OF INSURERS, | § | |
|     Defendant. | § | Consent Case[1] |

## MEMORANDUM OPINION AND ORDER

Before the Court are *Defendant's Motion for Reconsideration of Motion to Dismiss and Brief in Support*, filed February 3, 2022 (doc. 97), and *Defendant's Motion for Reconsideration of Defendant's Motion for Partial Summary Judgment and Plaintiff's Motion for Partial Summary Judgment and Brief in Support*, filed February 10, 2022 (doc. 99). Based upon the relevant filings, evidence, and applicable law, the motions are **DENIED**.

### I.  BACKGROUND

This is an insurance coverage dispute between Pogo Resources, LLC (Plaintiff), a Texas oil and gas company, and St. Paul Fire and Marine Insurance Company (Defendant) involving a pollution clean-up claim for a spill at a saltwater disposal well. (*See* doc. 63 at 2.)[2] Defendant issued separate commercial general liability policies to Plaintiff (Pogo Policy) and to Paladin Energy Corporation (Paladin) (Paladin Policy). (*Id.* at 7-8.)  Both policies had a provision stating that Defendant will "pay amounts you voluntarily incur, or you or any other protected person is legally

---

[1] By consent of the parties and the order of transfer dated January 29, 2020, this case has been transferred for the conduct of all further proceedings and the entry of judgment.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

required to pay, for covered pollution clean-up costs that are incurred . . . ." (*Id.*) Plaintiff later acquired substantially all the assets of Paladin during its Chapter 11 bankruptcy through a Stalking Horse Purchase and Sale Agreement (PSA). (*Id.* at 2.) Prior to the bankruptcy court's approval of the sale, saltwater spill incidents occurred at two of Paladin's wells in February 2017 (Spill A) and June 2017 (Spill B). (*Id.* at 3-4.) Claims for coverage under the Paladin Policy were submitted for both spills and were initially approved by Defendant. (*Id.* at 4-5.) Defendant subsequently denied coverage for Spill B under the Paladin Policy based, among other things, on the "total pollution exclusion" endorsement that altered coverage for "pollution clean-up costs." (*Id.* at 6.)

Plaintiff originally filed this lawsuit against Defendant in state court on September 27, 2019. (doc. 8-3.) After the case was removed to federal court, it filed a second amended complaint on May 13, 2021. (*See* docs. 62, 63.) It asserts claims under the Paladin and Pogo Policies for breach of contract, bad faith (including violations of Chapter 541 of the Texas Insurance Code), and declaratory relief. (doc. 63 at 13-17.) It seeks actual and exemplary damages, prejudgment and post-judgment interest, court costs, attorneys' fees under Tex. Civ. Prac. & Rem. Code §§ 38.001 and 37.009 and Tex. Ins. Code § 541.152, and declaratory judgment that Defendant "owes a duty under the Paladin and Pogo policies to 1) defend [it] against the landowner's demands related to Spill B; and 2) to indemnify [it] for the costs it has incurred and will continue to incur as a result of its legal liability to clean-up Spill B." (*Id.* at 14, 17-18.)

On July 14, 2021, Defendant moved to dismiss the claims for breach of contract and bad faith under the Paladin Policy under Rule 12(c) of the Federal Rules of Civil Procedure, and the motion was denied on January 24, 2022. (docs. 71, 95). On July 14, 2021, Defendant and Plaintiff filed competing partial motions for summary judgment, which were granted in part and denied in part on

2

January 31, 2022 (docs. 72, 75, 96). Plaintiff was granted summary judgment on the liability portion of its breach of contract claim under the Paladin Policy; Defendant was granted summary judgment on the claims for breach of contract, declaratory judgment, and bad faith under the Pogo Policy, and those claims were dismissed with prejudice. (doc. 96 at 43.) Plaintiff's claims under the Paladin Policy for declaratory judgment and bad faith, as well as the issue of damages for the breach of contract claim, remained for trial. (*Id.*)

On February 3 and February 10, 2022, Defendant moved for reconsideration under Federal Rule of Civil Procedure 59(e) on its motion to dismiss and on the competing partial motions for summary judgment. (*See* docs. 97, 99.) With timely filed responses and replies, Defendant's motions are ripe for consideration. (*See* docs. 101-104.)

## II.  MOTION FOR RECONSIDERATION

As noted by the Fifth Circuit, "the Federal Rules of Civil Procedure do not provide for a motion for reconsideration." *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) (noting that the federal rules of procedure "do not recognize a 'motion for reconsideration' *in haec verba*"), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.14 (5th Cir. 1994). Where a motion for reconsideration challenges a final judgment, it is treated either as a motion to alter or amend the judgment under Rule 59(e), or as a motion seeking relief from judgment under Rule 60(b). *Id.* Where a motion does not challenge a final judgment, it is considered under Rule 54(b). *See McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) (citing *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)).  Because no final judgment has yet been entered in this case, Defendant's motions are properly considered under Rule 54(b).

3

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Under this rule, "'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere,* 910 F.2d at 185). The Fifth Circuit has specifically noted Rule 54(b)'s flexibility, which reflects courts' inherent power to provide relief from interlocutory orders and decisions "'as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)); *Cabal v. Brennan*, 853 F.3d 763, 766 n.3 (5th Cir. 2017).

A.   **Motion to Dismiss**

Defendant moves to reconsider the denial of its motion to dismiss Plaintiff's claims for bad faith and Texas Insurance Code violations under the Paladin Policy "to correct manifest error of law and to prevent a manifest injustice with respect to these rulings." (doc. 97 at 1.) It argues that these claims fail as a matter of law and should be dismissed with prejudice because Texas does not recognize a cause of action for common law bad faith in the third-party context and because the alleged violations of the insurance code are not assignable as a matter of law. (*Id.* at 2, 5.) It argues, for the first time, that there is no viable cause of action for bad faith in the context of a third-party claim and that the allegations in the pleadings do not support a common law bad faith claim involving the denial of a first-party insurance claim. (*Id.* at 2.)

"Under Texas law, an insurer owes a duty of good faith in handling its insured's own claim of loss." *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 425 (5th Cir. 2003). "[A]

4

first party claim is stated when 'an insured seeks recovery for the insured's own loss,' whereas a third-party claim is stated when 'an insured seeks coverage for injuries to a third party.'" *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 17 (Tex. 2007) (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 n.2 (Tex. 1997)). "There exists no statutory cause of action for breach of the duty of good faith and fair dealing in the context of an insurer's handling of a third-party claim." *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521 (5th Cir. 2013).

Plaintiff's second amended complaint alleges that Defendant breached its common law duty of good faith because it "denied any further duty to indemnify Paladin or Pogo for the Spill B claim" even though it knew that it was "liable for the first-party clean-up and remediation costs." (doc. 63 at 15.) It further alleges that Plaintiff "has suffered and will continue to suffer monetary damages" as a result of Defendant's "unfair insurance practices." (*Id.* at 16.) These allegations are sufficient to state a claim for bad faith under Texas common law. Even though the second amended complaint alleges facts and pleads claims concerning third-party claims, it also alleges that Defendant "acted in bad faith in handling its own claim of loss." *See Med. Care Am.*, 341 F.3d at 425 (finding allegations that insurer acted in bad faith by failing to reimburse funds insured contributed to the settlement of a shareholder suit asserted "a first-party claim to which the duty of good faith applies").

Defendant also argues that claims for violations of the Texas Insurance Code are not assignable because they are personal and punitive. (doc. 97 at 5.) This is the same argument it previously asserted in its motion to dismiss. (*See* docs. 71 at 21.) The Court found that Plaintiff sufficiently alleged privity of contract under the Paladin Policy, and that none of the cases Defendant cited addressed insurance code violations that allegedly occurred after the policy was assigned to

5

the assignee. (doc. 95 at 31-32.) While a standalone insurance code claim is not assignable under Texas law, insurance policies are assignable. *See Gilmour v. Blue Cross & Blue Shield of Alabama*, No. 4:19-CV-160, 2020 WL 2813197, at *17-18 (E.D. Tex. May 29, 2020), *order vacated in part on other grounds by* 2021 WL 1196272 (E.D. Tex. Mar. 30, 2021); *Rapid Tox Screen LLC v. Cigna Healthcare of Texas Inc.*, No. 3:15-CV-3632-B, 2017 WL 3658841, at *14 (N.D. Tex. Aug. 24, 2017).

Because Defendant essentially rehashes the evidence, legal theories, or arguments that were raised in its motion to dismiss, it fails to identify any manifest error of law on this basis, or any other reason to reconsider the denial of its motion to dismiss Plaintiff's claims for bad faith and Texas Insurance Code violations under the Paladin Policy.

**B.     Motions for Partial Summary Judgment**

Defendant also moves to reconsider the rulings on the competing motions for partial summary judgment with respect to Plaintiff's claims for breach of contract and declaratory relief under the Paladin Policy "to correct manifest error of law and to prevent a manifest injustice with respect to these rulings." (doc. 99 at 4.) It argues that Plaintiff was not entitled to summary judgment on the breach of contract claim because Spill B is not covered under the Paladin Policy, and it does not have recoverable damages. (*Id.* at 11-12.) It also argues that when Plaintiff's motion for summary judgment on its declaratory relief claim under the Paladin Policy was denied, the claim should have been dismissed *sua sponte* because no coverage is afforded under the policy. (*Id.* at 13.)

The Court found that Plaintiff was "entitled to summary judgment on its claim that remediation and clean-up costs for Spill B are covered under the 'Pollution clean-up costs' provisions, as modified by the DW Endorsement of the Paladin Policy." (doc. 96 at 37.) It found

that Plaintiff "satisfied its initial burden of showing that the claim for pollution clean-up costs for Spill B [fell] within the Paladin Policy's scope of coverage," as it was undisputed that "Spill B occurred during above-ground operations at Paladin's saltwater well," that Spill B was timely reported under the Paladin Policy, and that costs have and will be incurred for Spill B. (*Id.* at 34.) Defendant failed to meet its burden of showing that the exclusions provided under the TPE Endorsement applied and negated coverage for Spill B. (*Id.* at 37.)

Under Texas law, all parts of an insurance policy must be read together; if the policy is ambiguous, the reasonable interpretation that favors coverage governs. *See Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 741 (Tex. 1998). The memorandum opinion detailed the Court's findings regarding how the terms and provisions of the CGL policy were modified by the TPE Endorsement and DW Endorsement and how they were inconsistent, and explained why the Paladin Policy was ambiguous when read in its entirety (i.e., the CGL policy, DW Endorsement, and TPE Endorsement). (doc. 97 at 35-36.) Because the Paladin Policy was ambiguous as a matter of law, the conflicting exclusions of the TPE Endorsement were disregarded to give meaning to the coverage provided by the DW Endorsement. (*Id.* at 36.) Ultimately, Plaintiff established that Spill B was covered under the "Pollution clean-up costs" provision, as modified by the DW Endorsement, of the Paladin Policy, and that there was no genuine dispute of material fact that Defendant breached the policy when it denied coverage for Spill B. (*Id.* at 38.)

Defendant disputes for the first time Plaintiff's claim that Spill B is covered by the DW Endorsement. (doc. 99 at 6.) It contends that the DW Endorsement only expands pollution clean-up coverage for "your above-ground operations for disposal wells," which involves "the handling of . . . any described substance for the purpose of its disposal in a disposal well." (*Id.* at 7.) A

7

"described substance" is defined as "any substance produced from any well" that is part of:

> • the oil or gas lease or well operations of another if the disposal operations are being performed at, on, or in any premises, site, or location that you rent or lease from others, o own; or
>
> • your oil or gas lease or well operations if the disposal operations are being performed by or for you at, on, or in any premises, site, or location that you don't rent or lease from others, or own.

(*Id.* at 7-8 (quoting doc. 65-6 at 16).) In other words, the DW Endorsement only applies if the pollution incident involved either (1) the disposal of the insured's produced saltwater at a well site owned or leased by another, or (2) the disposal of another's produced saltwater at a well site owned or leased by the insured. (doc. 99 at 9.) Defendant argues that Spill B is not covered by the DW Endorsement because the summary judgment record shows that the spill involved saltwater produced in connection with Paladin's oil and gas operations and occurred at a well site owned by Paladin. (*Id.* at 10.)  It further argues that because the DW Endorsement does not apply to the Spill B claim, no conflict exists, and the TPE Endorsement properly excludes coverage for Spill B. (*Id.* at 11.)  In support, it cites *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 116 (5th Cir. 2010), and *Liberty Mut. Ins. Co. v. Linn Energy LLC*, No. H-12-1886, 2013 WL 12141366, *6 (S.D. Tex. Sept. 5, 2013). (*Id.*)

Even if Spill B did not involve a "described substance" sufficient to fall under the DW Endorsement's definition of "your above-ground operations for disposal wells," the ambiguity from the TPE Endorsement and DW Endorsement still remains. As explained, the endorsements are inherently contradictory because they modify the same terms and provisions in the CGL policy. (doc. 96 at 34-37.)  The DW Endorsement expands coverage for pollution clean-up costs by extending coverage to the disposal operations of a third party at Paladin's well site and the disposal

8

operations of Paladin at another's well site, and by reaffirming coverage for Paladin's disposal operations at its own well sites. (*Id.* at 35-36.) In contrast, the TPE Endorsement unambiguously excludes coverage for all pollution incidents. (*Id.* at 37.) "Because the exclusions modified by the TPE Endorsement are inconsistent with the modified terms broadening coverage under the DW Endorsement, the interaction among these endorsements makes the Paladin Policy ambiguous as a matter of law." (doc. 96 at 36.)

Moreover, the cases Defendant cites in support are distinguishable. *Bay Rock* involved an endorsement that conflicted with an exclusion in the underlying policy. *See* 614 F.3d at 115. In *Linn Energy*, the court found that a similar TPE endorsement could co-exist harmoniously with an endorsement that added coverage for property damage because the TPE endorsement only excluded pollution-caused property damage while the other endorsement provided coverage for non-pollution property damage. *See* 2013 WL 12141366, at *6. In contrast, the TPE Endorsement renders the DW Endorsement "meaningless" because it eliminates the expanded coverage provided by the DW Endorsement. (doc. 96 at 36.)

Defendant also argues that the breach of contract claim fails because there is no evidence that it suffered any damages. (doc. 99 at 11-12.) This is the same argument raised in its response to Plaintiff's partial motion for summary judgment. (*See* doc. 83 at 9.) Plaintiff moved for, and was granted summary judgment on, the liability portion of its breach of contract claim under the Paladin Policy, and the element of contractual damages was reserved for trial. (doc. 96 at 38, 43.)

Defendant finally argues that the declaratory relief claim under the Paladin Policy should have been dismissed *sua sponte* because no coverage is afforded under the policy. (doc. 99 at 13.) This argument fails for the same reason that as its arguments regarding the breach of contract claim.

9

Because Defendant fails to identify any manifest error of law with respect to the competing motions for partial summary judgment, or any other basis for reconsideration of them.

### III. CONCLUSION

Defendant's motions are **DENED**.

**SO ORDERED** this 13th day of April, 2022.

                                                      IRMA CARRILLO RAMIREZ
                                                      UNITED STATES MAGISTRATE JUDGE